**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) <br> SARA LACY, ) <br> ) <br>         Plaintiff/Relator, ) <br> vs.                                                    ) <br> ) <br> NEW HORIZONS, INC., ET AL., ) <br> ) <br>         Defendants. ) | NO.  CIV-07-0137-HE |

**ORDER**

Plaintiff/Relator Lacy instituted this *qui tam* action on behalf of the United States against defendants, asserting claims for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. (2000). After the government declined to intervene in the case, plaintiff filed an amended complaint. The court granted defendants' motion to dismiss the amended complaint for failure to plead her claims with sufficient particularity, but granted leave to further amend. Order, May 5, 2008 [Doc. #56]. Plaintiff has now done so.

In her Second Amended Complaint ("SAC"), plaintiff alleges defendants presented false or fraudulent claims in violation of § 3729(a)(1), used false or fraudulent records in violation of § 3729(a)(2), conspired to get false or fraudulent claims paid in violation of § 3729(a)(3), and terminated plaintiff's employment in retaliation for her reporting certain of the alleged actions to regulatory authorities in violation of § 3730(h).[1]

---

[1]*This order refers to Lacy as "plaintiff," though, in light of the government's non-intervention, she pursues claims on behalf of the United States.*

Defendants have moved to dismiss the SAC, arguing that the complaint does not particularly plead the FCA claims as required by Fed. R. Civ. P. 9(b) and the FCA, that the court lacks subject matter jurisdiction over the FCA claims as they are based on publicly available information, and that the claims based upon implied certification, anti-kickback/self-referral violations, conspiracy, and retaliatory termination all fail to state a claim.

The court's consideration of the pending motion and of the sufficiency of the SAC has been rendered substantially more difficult due to plaintiff's inclusion in the SAC of large volumes of material which plainly do not belong in it. Roughly half of the 111 page complaint is devoted to legal argument and the citation of cases, material which belongs in briefs rather than the complaint. Further, plaintiff has attached hundreds of pages of exhibits to the complaint, most or all of which are unnecessary to it. The sufficiency of a complaint to state an FCA action is not based on weight or volume.

In any event, for the reasons set out below and considering the standards which do govern sufficiency, the court concludes defendants' motion should be granted and the SAC dismissed, with leave to amend granted as to a limited portion of the allegations included in the SAC.

## **BACKGROUND**

Defendants are companies and individuals involved in the operation of intermediate care facilities for mentally disabled adults ("ICF/MRs"). According to the complaint, plaintiff was employed as a case manager for defendants from June, 1999, to June, 2004.

This action arises from plaintiff's allegations that defendants provided substandard care for residents, understaffed the facilities or used untrained or undertrained personnel to staff the facilities, failed to report incidents of violence or abuse against residents, falsified records, received kickbacks, engaged in forward-billing and other fraudulent billing practices, and took money from residents. She alleges that, in light of these actions by defendants, their claims for payments from the various federal health care programs were false within the meaning of the FCA.

## DISCUSSION

### I.   Billing and Reporting Claims

Defendants assert that plaintiff has failed to plead her forward billing, annual cost report, quarterly wage enhancement report, and per diem billing FCA claims with sufficient particularity to satisfy Fed. R. Civ. P. 9(b) and that plaintiff's annual cost report and quarterly wage enhancement report allegations fail to state a claim under the FCA because they are not a "claim for payment or approval." 31 U.S.C. § 3729(a)(1). "'[A] false or fraudulent claim' is a common requirement of all three subsections of § 3729(a). Thus, if the factual allegations do not support a conclusion that a 'false or fraudulent claim' was made, the case may not proceed under the FCA." United States ex rel. Morton v. A Plus Benefits, Inc., 139 Fed. App'x 980, 982 (10th Cir. 2005).[2]   In determining whether a fraud claim should be dismissed for failure to plead with particularity, courts "accept as true all well-pleaded facts,

---

[2] Morton is an unpublished opinion, cited for its persuasive value only pursuant to 10th Cir.R.32.1.

as distinguished from conclusory allegations, and view those facts in the light most favorable to the non-moving party," confining their analysis to the text of the complaint. United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726 (10th Cir. 2006). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud" and "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Id. at 726-27 (internal quotation and citation omitted). For FCA claims, "[u]nderlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the circumstances constituting fraud and mistake that must be pled with particularity under Rule 9(b). However, unless such pleadings are linked to allegations, stated with particularity, of the actual false claims submitted to the government, they do not meet the particularity requirements of Rule 9(b)." Id. at 727.

Plaintiff has failed to plead her forward billing claims with the particularity required by Rule 9(b). Plaintiff's blanket allegation that defendants "implemented a scheme" of forward billing and directed employees to implement such a scheme, SAC ¶¶ 33 & 35, is merely a conclusory allegation that does not support an FCA claim. Sikkenga at 727-28. "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir.1991). Plaintiff's attempt to circumvent this conclusion by providing details of how monthly bills were submitted does nothing to address this underlying requirement.

Plaintiff's allegations concerning the submission of annual reports fail the particularity

4

requirements of Rule 9(b) and do not constitute a claim for payment under the FCA. Plaintiff alleges that defendants "included expenses of their personal groceries, gas, automobiles, cell phones, liquor, cell phones for relatives, and payments to non RN relatives for RN consulting services," SAC ¶ 59; "understaffed their facilities intentionally" and "fabricat[ed] other record[s] that showed full staffing and reflected payment for full staffing," SAC ¶ 63; and "from 1999 until June 2004 . . . shifted nonreimbursable cost to reimbursable cost centers and/or patient care," SAC ¶ 66. But beyond these basic allegations, plaintiff fails to provide specific details of such activity: no specific dollar amounts are attached to the allegations; no documentation or reference to specific, identifiable records is stated; and no indication of the specific amount that ultimately was overcharged to the government is included.

Further, the annual reports do not have the relationship to a payment or reimbursement request as it necessary for an FCA claim.[3]

> Title XIX and the Medicaid State Plan require all licensed Nursing Homes (NH) in Oklahoma to render an annual cost report. Collectively, these reports establish a basis for evaluation of the reasonableness of the rate paid to the nursing homes and determination of what constitutes an economically and efficiently operated facility.

"Oklahoma Nursing Home Cost Report Instructions," *available at*

http://www.okhca.org/WorkArea/showcontent.aspx?id=7267. *See also*, OKLA. ADMIN. CODE

§ 317:30-5-132 (2008) ("Each Medicaid-participating long term care facility is required to

---

[3]Plaintiff's reliance on 42 U.S.C. § 1395g is unpersuasive. That provision pertains to the insurance program that "provides basic protection against the costs of hospital, related post-hospital, home health services, and hospice care," 42 U.S.C. § 1395c, not intermediate care facilities for the Mentally Retarded.

submit an annual uniform cost report, designed by OHCA, for the state fiscal year just completed."). Absent some basis for associating the annual report with a particular request for payment, they do not state a basis for claim under the FCA. *See* United States ex rel. Woodard v. Country View Care Center, Inc., 797 F.2d 888 (10th Cir. 1986) (FCA recovery allowed where periodic cost reports tied to particular reimbursement requests).

Likewise, plaintiff's allegations concerning the submission of quarterly wage enhancement reports fail to plead an FCA claim with particularity and do not constitute a claim for payment under the FCA.[4] The general allegation that "Defendants kept three sets of staffing and employment record[s] with the specific intent of deceiving the Government with regard to the cost and application of payments to employers," SAC ¶ 68, fails the particularity requirement of Rule 9(b). It is true, as plaintiff notes, that both the annual reports and the quarterly reports are subject to the penalty provisions of 42 U.S.C. § 1320a-7b, but both are explicitly subject to §1320a-7b(a)(2) ("Whoever at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in *determining rights* to such benefit or payment...," (emphasis added)) rather than § 1320a-7b(a)(1) ("Whoever knowingly and willfully makes or causes to be made any false

---

[4]*The quarterly wage enhancement reports are used by the Oklahoma Health Care Authority (OHCA) to determine whether facilities qualified for the maximum wage enhancement rates that are included in the standard per diem rate paid to the facilities for the previous quarter. OKLA. ADMIN. CODE § 317:30-5-131.1 (2008). If a facility's quarterly report indicates that the maximum wage enhancement was not warranted for the previous quarter, OHCA will recoup the overpayment by making deductions from subsequent payments to the facility. Id. at § 317:30-5-131.1(e).*

statement or representation of a material fact in any application *for any benefit or payment under a Federal health care program . . .*," (emphasis added)). Application of § 1320a-7b(a)(2) to the annual reports and the quarterly reports further indicates that both are requirements for participation in the program, not claims presented for payment.

The per diem billing allegations, however, do address claims for payments, and at least some of the allegations are close to satisfying the pleading requirements of both Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and Rule 9(b). "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 127 S. Ct. at 1974). A plaintiff must "frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting Twombly, 127 S. Ct. at 1965). Plaintiff's claim that defendants billed the per diem rate for days after patients died, when a patient was not staying at a facility due to a family visit, when a patient was in a hospital, and when a patient was moved out of state, SAC ¶¶ 41, 46(a)(ii), & 79, all present plausible claims and come close to satisfying the particularity requirements of Rule 9(b) to state a claim under the FCA. Plaintiff has identified specific patients who may have been inappropriately billed for, some of the dates involved, and gives an indication of the dollar amounts involved (up to $144 per patient per day billed while not in residence at a facility). But plaintiff has not indicated such factual details as which facilities were involved, when all of the over-billing occurred, how many patient days were over-billed for, or estimated the amount over-billed for each patient. It is

7

possible that plaintiff can supply the necessary additional detail as to the per diem payments, but has not done so at this point.[5]

In sum, the court concludes that plaintiff has failed to adequately plead her billing and reporting FCA claims, which must be dismissed, but that leave to amend should be granted as to the per diem overbilling claims if she can state them with the particularity required by Rule 9(b).[6]

## II.  Substandard Care Allegations

Plaintiff asserts that defendants' failed to comply with 42 C.F.R. § 483.410 *et seq.* ("Conditions of Participation for Intermediate Care Facilities for the Mentally Retarded") and other statutory provisions, resulting in substandard care for patients. She argues that, in light of these failures, defendants' submission of reports certifying compliance with statutory requirements represents both an express and an implied "false certification" to the government in violation of the FCA.

The Tenth Circuit has recognized that, in at least some circumstances, a false implied certification can be the basis for an FCA claim:

> "Permitting FCA liability based on a false certification of compliance with a government contract, whether the certification is express or implied, is

---

[5]*As noted in the court's May 7, 2008, order, reasonable specificity in an FCA claim is necessary because, among other things, it is necessary to the resolution of other issues which arise in FCA cases (such as the public disclosure/original source question).*

[6]*As to the other claims, plaintiff has now had three chances to set them out with the required particularity. The court concludes it would be futile to belabor those claims further.*

>  consistent with the legislative history of the 1986 Amendments to the FCA.
>  . . . .
>  Additionally, the language and structure of the FCA itself supports the conclusion that, under 31 U.S.C. §3729(a)(1), a false implied certification may constitute a 'false or fraudulent claim.'"

Shaw v. AAA Engineering & Drafting, Inc., 213 F.3d 519, 531 (10th Cir. 2000). Unlike this case, however, Shaw involved a particular government contract for specified services and false work orders or invoices related to particular conditions of that contract. In that context, Shaw concluded that implied certifications of contract compliance could be the basis for an FCA claim. It did not involve the broadbrush issues of regulatory or program compliance as plaintiff relies on here, factors which are particularly pertinent in the heavily regulated area of health care.

The false certification theory plaintiff relies on here has been referred to as one of "legally false" certification. It differs from 'factually false' certification, such as that involved in Shaw, "which involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." Mikes v. Straus, 274 F.3d 687, 696-97 (2d Cir. 2001) (citations omitted). "A legally false certification of compliance with a statute or regulation cannot form a viable FCA cause of action unless payment is expressly conditioned on that certification." United States ex rel. Conner v. Salina Regional Health Center, Inc., 459 F. Supp. 2d 1081, 1086 (D. Kan. 2006) (citing United States ex rel. Gross v. AIDS Research Alliance-Chicago, 415 F.3d 601, 604 (7th Cir. 2005); United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 243 (3d Cir. 2004); United States ex rel. Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 382-83 (5th

Cir. 2003); United States ex rel. Augustine v. Century Health Servs., Inc., 289 F.3d 409, 413-14 (6th Cir. 2002); United States ex rel. Siewick v. Jamieson Sci. & En'g, Inc., 214 F.3d 1372, 1376 (D.C. Cir. 2000); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 786-87; United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266-67 (9th Cir 1996); In re Cardiac Devices Qui Tam Litig., 221 F.R.D. 318, 335 (D. Conn.2004); United States ex rel. Barrett v. Columbia/HCA Health Care Corp., 251 F.Supp.2d 28, 32 (D.D.C. 2003); United States ex rel. Graves v. ITT Educ. Servs., 284 F. Supp. 2d 487, 498 (S.D. Tex. 2003); United States ex rel. Swan v. Covenant Care, Inc., 279 F. Supp. 2d 1212, 1221 (E.D. Cal.2002)); *see also* Mikes, 274 F.3d at 697 ("We join the Fourth, Fifth, Ninth, and District of Columbia Circuits in ruling that a claim under the Act is legally false only where a party certifies compliance with a statute or regulation as a condition to governmental payment.").

The certifications upon which plaintiff seeks to rely do not involve compliance with statutes or regulations as a condition to the government payment. Her allegations related to program compliance primarily revolve around 42 C.F.R. Ch. IV, Subch. G, Pt. 483, Subpt. I, "Conditions of Participation for Intermediate Care Facilities for the Mentally Retarded." 42 C.F.R. § 483.410 et seq. These provisions delineate specific requirements that IMC/MR facilities which participate in federally funded programs must meet. Their violation may result in termination of a facility's participation in the program, should the appropriate agency so determine,[7] but they do not constitute conditions to government payments within

---

[7]*To be certified to participate in a provider agreement, the state survey agency must provide notice that an ICF/MR:*

the meaning of Mikes, Conner and the other cases referenced above which have considered the issue in a health care context.[8]

The court concludes that, in this context, "implied false certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies

---

*(1) An ICF/MR meets the conditions of participation set forth in subpart I of part 483 of this chapter.*
*(2) The ICF/MR has been granted a waiver or variance by CMS or the survey agency under subpart I of part 483 of this chapter.*
*(3) An ICF/MR has been certified with standard-level deficiencies and*
*(i) All conditions of participation are found met; and*
*(ii) The facility submits an acceptable plan of correction covering the remaining deficiencies, subject to other limitations specified in § 442.105.*

42 C.F.R. § 442.101(d).  The survey agency has discretionary power to certify noncompliant facilities for payment.  "The failure to meet one or more of the applicable conditions of participation is cause for termination or non-renewal of the ICF/MR agreement."  Id. § 442.101(e).  If the survey agency finds an ICF/MR deficient in meeting the subpart I or part 483 standards, "the agency may certify the facility for Medicaid purposes . . . ."  Id. § 442.105.  "Facilities with deficiencies may be certified under § 442.105 . . . ."  Id. § 442.110.  "A survey agency must terminate a facility's certification if it determines that" the facility fails the conditions of participation in subpart I of part 483 or the facility poses an immediate jeopardy to the health and safety of its residents.  Id. § 442.117.  Thus, according to the regulations, as long as the survey agency approves of an ICF/MR facility it is entitled to receive payments.

[8]Plaintiff's reliance on 42 U.S.C. §1320a-7(b) is also unpersuasive because it provides "[t]he Secretary may exclude" a facility from participating in federal programs if the facility "fails to meet professionally recognized standards of health care."  Id. § 1320a-7(b)(6)(B) (emphasis added).  Likewise, § 1320c-5(a) "acts prospectively, setting forth obligations for a provider to be eligible to participate in the Medicare program.  Mikes, 274 F.3d at 701.  Section 1396a(a) simply sets forth the standards for State plans for medical assistance under the Medicare program.  And § 1396r—which actually applies to nursing facilities not ICF/MRs, as those terms are defined in the Act—simply sets forth the standards for participation for nursing facilities and provides for permissive exclusion of nursing facilities much like subpart I of part 483 does for ICF/MRs.

*expressly* states the provider must comply in order to be paid." Mikes, 274 F.3d at 699-700. As the statutes and regulations upon which plaintiff relies are not express conditions for payments by the government, her allegations of non-compliance with those provisions cannot serve as the basis for an FCA claim. Accordingly, plaintiff's claims based on her substandard care allegations must be dismissed with prejudice.

### III. **Anti-Kickback and Self-Referral Allegations**

Plaintiff has not responded in any meaningful way to the motion to dismiss insofar as it addresses plaintiff's reliance on the Medicare anti-kickback statue, 42 U.S.C. § 1320a-7b(b), and the Stark Law, § 1395nn. The Medicare anti-kickback statute makes it illegal to knowingly and willingly solicit or receive any remuneration for referring individuals to a facility participating under federal programs and to knowingly and willingly offer to pay or pay for such referrals. § 1320a-7b(b). The Stark Law makes illegal certain physician referrals to facilities with which the physician has a financial relationship. § 1395nn(a)(1).

Plaintiff has failed to state a claim that defendants' violated the Medicare anti-kickback statute. Referring individuals from a community-based mental healthcare service to a related ICF/MR does not amount to an anti-kickback violation; there has to be corresponding offer or payment and/or solicitation or receipt of payment for there to be a violation. Likewise, transferring patients between related facilities alone is also not a violation of the anti-kickback statute. Plaintiff has not alleged that any solicitation, receipt, offer, or payment occurred in these transactions. Further, because none of the defendants is

a physician, § 1395nn is also inapplicable in this case.

The court concludes plaintiffs' kickback/self-referral allegations fail to state a claim. Her kickback/self-referral claims must be dismissed with prejudice.

## IV.     FCA Conspiracy Claim

Plaintiff's response also does not meaningfully contend with defendants' argument that the complaint fails to state a conspiracy claim under 31 U.S.C. § 3729(a)(3). The SAC does include allegations that "there was such unity of identity between Don and Katy Moore[,] and by 2004 Mark Moore[,] and the corporations they ran . . . that no separation of identity or distinction could be made between the individual and the corporations." S.A.C. ¶ 21. And defendant Lasyone is "an agent and employee of the Defendants Moore." *Id.* ¶ 10. However, plaintiff fails to adequately address the application of what has been referred to as the "intracorporate conspiracy doctrine." The doctrine was developed in the antitrust context and the 10th Circuit has "subsequently applied it to related civil conspiracies." Brever v. Rockwell International Corp., 40 F.3d 1119, 1126 (10th Cir. 1994) (citing Zelinger v. Uvald Rock Asphalt Co., 316 F.3d 47, 51-52 (10th Cir. 1963). Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, cannot conspire with the corporation. Brever, 40 F.3d at 126. *See also*, White v. American Airlines, Inc., 915 F.2d 1414, 1418 (10th Cir. 1990) (noting the court's prior decision upholding the district court's conclusion that "a corporation cannot conspire with itself as a matter of law, and the individual agents were not alleged to have acted outside the scope of their

employment"). The doctrine "was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be [illegal]." Kivanc v. Ramsey, 407 F. Supp. 2d 270, 276-77 (D.D.C. 2006). FCA conspiracy claims based upon the actions of a corporation and its agents are barred by the intracorporate conspiracy doctrine. *See*, United States ex rel. Fent v. L-3 Communications Aero Tech LLC, No. 05-cv-0265, 2007 WL 3283689, at *5 (N. D. Okla. Nov. 2, 2007) (unpublished - holding that corporation and its employees could not conspire to present false claims to the United States); United States ex rel. Bartlett v. Tyrone Hospital, Inc., 234 F.R.D. 113, 128 (W.D. Pa. 2006) (holding that the doctrine legally prohibits an FCA conspiracy claim between an agent and its principal); United States ex rel. DRC, Inc. v. Custer Battlers, LLC, 376 F. Supp. 2d 617, 651 (E.D. Va. 2005) (the doctrine warrants dismissal of FCA conspiracy claim against corporation and its employees).

Even if plaintiff were able to avoid the application of the intracorporate conspiracy doctrine, she has, in any event, failed to allege the conspiracy with the particularity required by Rule 9(b) for FCA claims. Plaintiff has, for the most part, failed to specify the who, what, when, where, and how of any conspiracy. General or conclusory allegations of conspiracy are insufficient. Plaintiff's conspiracy claim must be dismissed.

## V. **Retaliatory Discharge Under the FCA**

Plaintiff also fails to state a claim that she was discharged in violation of the FCA. The FCA's whistleblower protection provision states:

> Any employee who is discharged . . . because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h). To state an FCA retaliatory discharge claim, a plaintiff must show that they were engaged in protected activity under the FCA and the discharge was motivated by the employee's protected activity. *United States ex rel. Erickson v. Uintah Special Services Dist.*, 268 Fed. App'x 714, 716 (10th Cir. 2008) (unpublished)).[9] Plaintiff's reporting of violations of regulations regarding patient care and safety to the "Oklahoma Department of Health" in 2002, SAC ¶ 19, does not amount to "protected activity" under the FCA. As noted above, violations of the regulations regarding the participation of a facility in the Medicare program is not a false claim presented to the government. Plaintiff's discharge may have been in response to making this report, but this report was not an act in furtherance of an FCA action.[10] The court concludes that plaintiff has not stated a claim for relief under § 3730(h). As such, plaintiff's retaliatory discharge claim must be dismissed.

## CONCLUSION

Accordingly, the defendants' motion to dismiss [Doc. #62] is **GRANTED** and plaintiff's claims are **DISMISSED**. Insofar as plaintiff's FCA claims are based on the

---

[9] *Cited for persuasive value only pursuant to 10th Cir. R.32.1.*

[10] *Plaintiff's response brief suggests her FCA-related activity began in November or December of 2004, several months after her termination. Plaintiff's response brief, p. 2.*

15

alleged per diem billing for patients not in residence at a facility, plaintiff is granted leave to amend to state her claims with the necessary particularity if she can do so. Otherwise, based on the legal insufficiency of her claims and/or the multiple failures to plead with sufficient particularity, plaintiff's claims are dismissed with prejudice. Absent the filing of an amended complaint as to the per diem billings within **twenty (20) days**, those claims will similarly be deemed dismissed with prejudice.

**IT IS SO ORDERED**.

Dated this 25th day of September, 2008.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE